# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **JANET HARRIS, Individually, and as** ) <br> **Next of Friend of the children of** ) <br> **Janet Harris and the Decedent** ) <br> **Timothy Harris, namely:** ) <br> **C.E.H., Age 15, year of birth 1999** ) <br> **R.G.H., Age 11, year of birth 2002 and** ) <br> **M.S.H., Age 9, year of birth 2004** ) <br> **Surviving Spouse and Daughters,** ) <br> **Respectively of Decedent Timothy Harris** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **vs.** ) <br> ) <br> **DAVIESS-DEKALB COUNTY** ) <br> **REGIONAL JAIL ,** ) <br> **an organization authorized by the** ) <br> **County ordinances of Daviess and DeKalb** ) <br> **County, Missouri and by Missouri State** ) <br> **Statute; and** ) <br> ) <br> ) <br> **DAVIESS-DEKALB REGIONAL JAIL** ) <br> **DISTRICT,** ) <br> **A district organized and authorized by** ) <br> **the County ordinances of Daviess and DeKalb** ) <br> **County, Missouri and by Missouri State** ) <br> **Statute, to operate the Daviess-DeKalb** ) <br> **County Regional Jail; and** ) <br> ) <br> ) <br> **ROBERT GRAY, Individually, and in his** ) <br> **Official Capacity as Jail Administrator and** ) <br> **Director of the Daviess-DeKalb County** ) <br> **Regional Jail; and** ) <br> ) <br> ) | **Case No.** |

1

Document 1 Filed 06/18/14 Page 1 of 15
Case 5:14-cv-06069-ODS   Document 1   Filed 06/17/14   Page 1 of 15

BEN BECERRA, Individually and in his )
Official Capacity as Sheriff of Daviess )
County, Missouri and member of the Board )
of Directors of the Daviess-DeKalb County )
Regional Jail; and )
)
WES RAINES, Individually and in his )
Official Capacity as Sheriff of DeKalb )
County, Missouri and member of the Board )
of Directors of the Daviess-DeKalb County )
Regional Jail; and )
)
)
RANDY SIMS, Individually and in his )
Official Capacity as Presiding Commissioner of )
Daviess County Missouri and member of the )
Board of Directors of the Daviess-DeKalb )
County Regional Jail; and )
)
)
HAROLD ALLISON, Individually and in his )
Official Capacity as Presiding Commissioner of )
DeKalb County, Missouri and member of the )
Board of Directors of the Daviess-DeKalb )
County Regional Jail; and )
)
)
UNDETERMINED DEPUTIES OF DEKALB )
COUNTY, MISSOURI SHERIFF'S )
DEPARTMENT, who assaulted Decedent )
and used excessive force in arresting )
Decedent, which may have contributed to )
Decedent's death; and )
)
)
DAVIESS COUNTY, MISSOURI; and )
)
)
DAVIESS COUNTY COMMISSION; and )
)
)
DEKALB COUNTY, MISSOURI; and )
)
)

**DEKALB COUNTY COMMISSION** )
)
**Defendants.** )

# COMPLAINT

### 42 U.S.C. 1983; Civil Rights Violation;
### Deliberate Indifference to Medical Needs; Wrongful Death

COMES NOW Plaintiffs, by and through their Counsel, Michele C. Puckett, and for their cause of action against the Defendants, state the following:

### INTRODUCTORY STATEMENT

1.      This is a civil action pursuant to 42 U.S.C. § 1983 and 1988 and pendent Missouri state law claims, seeking money damages against Defendants, who include the above named party Defendants, for committing and/or condoning acts under color of state law which denied Decedent and Plaintiffs of their rights under the Constitution of the United States and the State of Missouri and which resulted in the wrongful death of Decedent Timothy Harris on or about June 2, 2014, due to utter and complete failure to provide the Decedent adequate and necessary medical treatment for serious health problems, of which the Defendants were specifically aware.

These acts were committed with the intent to deny Decedent, and/or with deliberate indifference to, Decedent's urgent medical needs and requirements while he was incarcerated in the Daviess-DeKalb County Regional Jail (hereinafter "Jail") while awaiting trial from May 8, 2014 until his death. Plaintiffs further allege that the named Defendants are liable for money damages to Plaintiffs because they failed, on a continuing basis, to instruct, supervise, control and discipline the Sheriff's Deputies and jail employees who manage the Jail, especially with regard to the manner in which prisoners at that facility are accorded their rights to appropriate and necessary medical treatment.

Plaintiffs further allege that the actions and omissions resulting in Decedent's death were known to the Defendants, and were a result of the official policy and/or the custom and practice of the Jail and its Administrator and Board of Directors.

2.      On information and belief, Plaintiffs state that there are additional police officers, Sheriff's Deputies and jail personnel who are liable and responsible, in whole or in part, for the damages suffered by Plaintiffs and Plaintiffs' Decedent, both for his wrongful death and for the agony and suffering experienced by Decedent preceding his death. The identity and culpability of any such persons will be revealed after Plaintiffs have engaged in discovery.

## JURISDICTION

3.      This action is brought pursuant to 42 U.S.C. § 1983 and 1988 and the Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution. This Court has jurisdiction of this action pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331 and 1343. Plaintiffs further invoke the supplemental jurisdiction of this Court to hear and decide pendent, related claims arising under state law.

4.      Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5.      Plaintiffs, Janet Harris (hereinafter "Janet") and the three minor daughters of the Decedent and Janet Harris are residents and citizens of Maysville, Missouri, which is located in the Western District of Missouri.

6.      Defendant, Daviess-DeKalb County Regional Jail (hereinafter "Jail") is a regional jail facility created by ordinances of Daviess and DeKalb Counties and authorized by Missouri State Statute. This facility is located in Pattonsburg, Missouri.

7.      Defendant, Daviess-DeKalb Regional Jail District (hereinafter "District") is a district organized by ordinances of Daviess and DeKalb Counties and authorized by Missouri State Statute to operate the Jail. The Counties within this District are DeKalb and Daviess Counties.

8.      At all times pertinent hereto, Defendant, Robert Gray was the Jail Administrator and Director appointed by the Daviess-DeKalb County Regional Jail Board and, as such, was responsible for the training, supervision, activities and behavior of the personnel employed at the Jail. He is sued individually, and in his official capacity as Administrator and Director of the Daviess-DeKalb County Regional Jail.

9.      At all times pertinent hereto, Defendants, Ben Becerra, Wes Raines, Randy Sims and Harold Allison were and are members of the Daviess-DeKalb County Regional Jail Board, a "regional" jail facility authorized by Ordinances of both Daviess and DeKalb Counties and by Missouri State Statute, acted in such supervisory capacity, were acting under color of state law and were acting pursuant to official policy and/or custom and practice of the Jail, the Sheriff's Departments and County Commissions of both Daviess and DeKalb County, Missouri. They are sued individually and in their official capacity as the Board of Directors of the Daviess-DeKalb County Regional Jail.

10.     Defendant, Daviess County, Missouri is a municipal corporation organized and existing under the laws of the State of Missouri and governed by the Daviess County Commission. It, along with Defendant, DeKalb County, Missouri authorized the formation of the Regional Jail and Regional Jail District, appointed the Board of Directors and the Jail's Administrator and Director, Defendant Gray, and is ultimately responsible for the hiring, supervision, training, activities and behavior of the Jail's personnel.

12. Defendant, Daviess County Commission is a municipal corporation organized and existing under the laws of the State of Missouri and employs and is responsible for the training and supervision, activities and behavior of the Board of Directors, the Jail Administrator and Director and the Jail's personnel.

13. Defendant, DeKalb County, Missouri is a municipal corporation organized and existing under the laws of the State of Missouri and governed by the DeKalb County Commission. It, along with Defendant, Daviess County, Missouri authorized the formation of the Regional Jail and Regional Jail District, appointed the Board of Directors and the Jail's Administrator and Director, Defendant Gray, and is ultimately responsible for the hiring, supervision, training, activities and behavior of the Jail's personnel.

14. Defendant, DeKalb County Commission is a municipal corporation organized and existing under the laws of the State of Missouri and employs and is responsible for the hiring, supervision, training, activities and behavior of the Board of Directors, the Jail Administrator and Director and the Jail's personnel.

## FACTS COMMON TO ALL COUNTS

15. On or about May 8, 2014 at approximately 9:00 PM, Decedent, who had a prior felony conviction, was arrested in DeKalb County, Missouri by unidentified DeKalb County Sheriff's Deputies, when he allegedly attempted to buy a rifle from a private seller, an alleged felony offense for which Decedent was charged by the DeKalb County Prosecuting Attorney.

16. At the time of his arrest, Decedent, who was not resisting arrest, was tasered multiple times, severely beaten by arresting officers, with the beatings continuing for a substantial period of time after Decedent had been handcuffed and forcibly thrown to the ground.

Document 1 Filed 06/18/14 Page 1 of 15
Case 5:14-cv-06069-ODS   Document 1   Filed 06/17/14   Page 6 of 15

After the arrest, the arresting officers refused to remove all of the taser prongs from the Decedent's body.

17.     Janet later observed that as a result of the excessive use of force in Decedent's arrest that he had two large clumps of hair missing from the back of his head, was unable to walk without the assistance of a wheelchair, and he complained of unbearable pain.

18.     Decedent was then transported to the Jail wherein he was placed into a cell which Jail personnel refer to as "the Boat". "The Boat" is a scooped out solitary cell with a mattress on the floor, no toilet, sink or running water.

19.     Decedent was forced to stay in "the Boat" for 12 days, during which time he ate, slept, defecated and urinated in this area, and was forced to sit in his own feces and urine. Janet was not allowed to see the Decedent while he was housed in "the Boat", and she was repeatedly told that he was "too sick" to complete a visitor form, and without this form she was prohibited from visiting. During this period the Decedent was also not allowed telephone calls.

20.     On or about May 19, 2014, Decedent was briefly moved from "the Boat" to a regular jail cell wherein he was exposed to other inmates who had the opportunity to observe his declining condition. However, that very same day the Decedent stopped breathing while in a regular cell, and he was immediately returned back to "the Boat".

21.     On or about May 19, 2014, the Decedent was allowed to complete a visitor authorization form. Janet was only allowed to visit the Decedent twice at the Jail because the Jail policy limits visitors to once a week.

22.     On or about May 22, 2014, Janet was allowed to visit the Decedent for the first time since his arrest on May 8, 2014. During this visit Janet observed the Decedent's breathing to be very shallow and labored. The Decedent appeared extremely weak, in fact he was so weak that Janet had difficulty even hearing him speak. The Decedent had also suffered a dramatic weight loss.

23.     During the May 22, 2014 visit with Janet, the Decedent informed Janet that he was being housed in "the Boat", and that his health was rapidly declining yet Jail personnel were refusing to provide him with medical care. The Decedent told Janet "I just need to get out of here. I'm not going to make it".

24.     On or about May 28, 2014, Janet was allowed for the second and final time to visit the Decedent. During this visit Janet observed that the Decedent was noticeably struggling to breathe, he looked extremely weak and appeared pale in complexion. The Decedent told Janet that he had sent a message to the Jail's Nurse demanding medical treatment and indicating that if he did not receive treatment he intended to contact the U.S. Department of Justice. The Decedent was so weak he terminated the visit early because he was too exhausted. The Decedent told Janet that he loved her but he was too weak to continue the visit. This was the last time Janet saw her Husband alive.

25.     Janet called the Jail on several occasions to complain that the Decedent was not receiving necessary medical treatment. She was informed by Jail personnel that "Tim just has a cold", he is "just fine" and on one occasion Janet was told that "we cannot give you any information".

26.     On yet another occasion Janet asked Jail personnel how she could forward a package to Decedent, containing, inter alia, clean underwear, because that which he was wearing was full of feces and urine. However, the Jail did not allow Janet to provide these very basic items of necessity to the Decedent.

27.     During Decedent's incarceration at the Jail, Janet received a telephone call from another inmate who was using the Decedent's Jail calling card. The inmate informed Janet that the Decedent was not breathing, and that she needed to call 911 emergency, because the Jail was refusing to call emergency services for the Decedent. Janet then called 911, wherein 911 emergency put Janet on hold and they called the Jail. The Jail told Janet and the 911 operator that the Decedent was "fine", and that he merely had a slight cough. The Jail took no further action.

28.     Approximately 3-4 days later Janet received another telephone call from a former inmate of the Jail named "Phil". "Phil" told Janet that the Decedent was in "terrible condition", that he periodically stopped breathing during the night and that the Jail was refusing to provide him with medical services. "Phil" also informed Janet that he also intended to contact the U.S. Department of Justice in regards to the Jail's maltreatment of the Decedent.

29.     Finally, on June 2, 2014 Jail personnel decided to take the Decedent to the Cameron, Missouri Emergency Room. The Jail required the Decedent to change what was presumably his filthy and feces covered clothes before they would allow him to be transported to the hospital, and the Decedent collapsed in the changing room. It was necessary for Ambulance service paramedics to resuscitate the Decedent, after which they transported him to the Cameron Hospital's Emergency Room.

30.     Cameron Emergency Room personnel inserted a chest tube into the unconscious Decedent in an attempt to drain his left lung, ordered blood work, performed X-Rays, an EKG and a CAT Scan. After approximately 5 hours the Decedent's heart and respiration stopped for a second time that day, and he was resuscitated yet again. It was determined that Decedent's left lung was almost completely filled with an infective pus derived from an untreated infection which had persisted and gone untreated for a "long time".

31.     Given the Decedent's condition was dire, the decision was made to airlift the Decedent to St. Luke's Hospital in Kansas City. The Decedent expired in the helicopter en route.

32.     Prior to the Decedent's arrest, he had filed two separate criminal complaints with law enforcement officials regarding assaultive behavior inflicted on both Janet and his 9 year old daughter. When the officials failed to undertake action to investigate these allegations, the Decedent engaged in a series of actions designed to draw attention to the failures of the local law enforcement, including postings on social media, and threats to file an official complaint with the U.S. Department of Justice. A local governmental official threatened the Decedent that he would be brought to court criminally if he did not cease and desist from his public complaints against local law enforcement. Fifteen days after this credible threat from a local official, the Decedent was "set up" via sting operation which resulted in unjustified criminal charges. This led to his incarceration in the Jail and the maltreatment and deliberate indifferences described above. These circumstances suggest the likely motivation by law enforcement and Jail personnel for the deliberate mistreatment of Decedent in the Jail, and clearly suggest a deliberate indifference to Decedent's basic and urgent medical needs.

**Deliberate Indifference to Substantial and Serious Medical Needs While Incarcerated Cognizable Under 42 U.S.C. Section 1983**

For Count I of Plaintiffs' Cause of Action against all Defendants, Plaintiffs state:

33.     Plaintiffs incorporate by reference herein each and every allegation contained in paragraphs (1) through (32) of this Complaint as though fully set forth herein.

34.     All Defendants and other unknown law enforcement officers, acting under color of state law, committed the following acts in violation of Plaintiffs' Constitutional rights:

>    a.     Plaintiffs' Decedent, at the time of his incarceration in the Jail on May 8, 2014, was suffering from a serious medical need and was incarcerated under conditions posing a substantial risk of serious harm.

>    b.     Defendants, including Gray and all other Defendants, intentionally, recklessly and/or with deliberate indifference to Decedent's substantial and serious medical needs refused and failed to provide increasingly urgent medical care to combat a serious lung infection, which, left totally untreated, resulted in Decedent's untimely and easily avoidable death.

>    c.     During Decedent's incarceration and after his death, Defendants took affirmative steps to conceal both the extent and seriousness of Decedent's dire medical condition and to conceal their culpability.

>    d.     Defendants placed Decedent in a solitary and unsanitary place of confinement ("the Boat"), in which Decedent was forced to sit and dwell among his own urine and feces for 12 plus days, all the while ignoring complaints that his health was rapidly deteriorating.

Document 1 Filed 06/18/14 Page 1 of 15
Case 5:14-cv-06069-ODS   Document 1   Filed 06/17/14   Page 11 of 15

e. Refused to allow Decedent to make outside telephone calls and unreasonably denied visitation rights with his Wife, clearly for the purpose of concealing Decedent's ever increasing health deterioration.

f. Falsely told a 911 operator and Decedent's Wife within a few days prior to his death that he was "fine" and did not require medical treatment or emergency services, thus preventing any opportunity to treat and reverse the infection process which ultimately resulted in his death.

g. The deliberate indifference to the medical needs of Decedent and many other prisoners at the Jail has been an official policy, custom and practice of those responsible for the operation of the Jail and the supervision of its personnel.

35. As a direct and proximate result of the deliberately indifferent disregard of Decedent's dire medical needs, Plaintiff Janet Harris was forced to expend monies for the Decedent's untimely medical treatment prior to his death, for funeral and cremation expenses and for such other expenses in an amount that, at this time, Plaintiff Janet Harris is unable to state with certainty.

36. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiffs Janet Harris, C.E.H., R.G.H. and M.S.H. have been forever deprived of Decedent's consortium, services, comfort, companionship, instruction, guidance, counsel, training and support and have forever lost the benefits from any past, present or future income provided by Decedent.

37. As a direct and proximate result of the acts and omissions of the Defendants as described above, Decedent was forced to suffer great mental and physical pain and anguish prior to his death, in an amount which Plaintiffs are unable to state with certainty at this time.

38.     That the acts and omissions of the Defendants were willful, wanton and committed with deliberate indifference to the Decedent's Constitutional rights under the Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.

WHEREFORE, Plaintiffs pray for judgment against the Defendants for money damages, for punitive damages, court costs, statutory attorney fees, pre-judgment and post-judgment interest and such other relief as the Court deems just and proper.

## COUNT II

## Wrongful Death Under the Laws of Missouri

Comes Now Plaintiffs, and for their second cause of action, pursuant to the pendent jurisdiction of this Court and the Wrongful Death Statute of the State of Missouri, state as follows:

39.     Plaintiffs incorporate by reference herein the allegations contained in paragraphs (1) through (38) as if fully set forth herein.

40.     Defendants negligently caused Decedent's death, in the following respects:

a.      Negligently failed to provide necessary medical care when they knew, or through the exercise of ordinary care, should have known that Decedent, while in their custody was suffering from a substantial and serious medical condition, which, if left untreated, was practically certain to result in Decedent's death.

b.      Defendants had a statutory, state and federal, common law, and Constitutional duty to provide to Decedent necessary medical care while in their custody.

c.      Defendants breached their duty.

d.      Negligently failed to supervise and train or hire competent Jail personnel

in the exercise of their non-delegable duty to provide necessary medical care to

Decedent.

41.     As a direct and proximate result of the Defendants' negligence, Decedent died

from a serious infection in his left lung, even though such infection was easily treatable and

curable, but was instead allowed to increase to the point of being fatal by the utter failure of the

Defendants to provide adequate medical care to diagnose and treat the condition.

42.     As a direct and proximate result of the negligence of the Defendants, Plaintiff

Janet Harris was forced to expend monies for medical treatment of Decedent prior to his death,

for funeral and cremation expenses, and for such other expenses in an amount that, at this time,

Plaintiffs are unable to state with certainty.

43.     As a direct and proximate result of the negligence of the Defendants, Plaintiffs, on

behalf of the individuals entitled to bring a lawsuit for wrongful death of Decedent, has been

forever deprived of Decedent's consortium, services, comfort, companionship, instruction,

guidance, counsel, training and support and has forever lost the benefits of past, present and

future income provided by Decedent.

44.     As a direct and proximate result of the negligence of the Defendants, the

Decedent was forced to suffer great mental and physical pain and anguish before his death, for

which Plaintiff Janet Harris, and on behalf of the individuals entitled to bring a wrongful death

lawsuit under Missouri law, specifically including his children named above, are entitled to

recover in an amount which at this time Plaintiff is unable to state with certainty.

45.    That the acts and omissions of the Defendants were willful, wanton and committed with deliberate indifference to the Decedent's Constitutional rights under the Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.

WHEREFORE, Plaintiffs pray for judgment against the Defendants, for money damages, for punitive damages due to the deliberate indifference of the Defendants as set forth above, for costs, attorney fees, pre-judgment and post-judgment interest and such other relief as the Court deems just and proper.

Date:                                                          **MICHELE C. PUCKETT, P.C.**

                                                                 s/Michele C. Puckett-Burkhead
                                                                Michele C. Puckett-Burkhead #45150
                                                                616 Lana Drive
                                                                P.O. Box 607
                                                                Cameron, Missouri 64429-0607
                                                                Telephone Number (816) 632-5297
                                                                ATTORNEY FOR PLAINTIFFS