IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

JANET HARRIS, et al.,                    )
                                         )
                    Plaintiffs,          )
                                         )
vs.                                      )        Case No. 14-6069-CV-SJ-ODS
                                         )
DAVIESS-DEKALB COUNTY                     )
REGIONAL JAIL, et al.,                    )
                                         )
                    Defendants.          )

**ORDER AND OPINION GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

Pending are ten motions for summary judgment. Motions were filed by
Symphony Diagnostic Services No. 1, LLC, d/b/a Mobilex USA ("Mobilex"), Dr.
Bernfield, and Dr. Eisenstein ("Third-Party Defendants") (Doc. #368); Norman Johnson
(Doc. #374); Deborah Ash (Doc. #377); Sandi Lehman (Doc. #380); Sherri Miller (Doc.
#383); Brenda Johnson (Doc. #386); Karen Butler (Doc. #389); Karen Stocke (Doc.
#392); Kyle Hadley (Doc. #395); and Daviess-DeKalb Regional Jail District, Daviess-
DeKalb County Regional Jail, DeKalb County Commission, Daviess County
Commission, DeKalb County, Daviess County, Ben Becerra, Robert Gray, Wes Raines,
and Randy Sims (Doc. #398). With regard to Documents #377, 380, 383, 386, 389,
392, 395, no opposition was filed, and the time for filing opposition has passed. The
remaining motions are fully briefed. All ten motions are now ripe for consideration.


**I.   INTRODUCTION**

Timothy Harris ("Harris" or "decedent") was confined in the Daviess-DeKalb
County Regional Jail ("the Jail") from May 8, 2014, to June 2, 2014. Defendant
Advanced Correctional Healthcare, Inc. ("ACH") provided medical care to the inmates in
the Jail. During his confinement, Harris complained of medical issues, including chest
pain, his belief that one lung was filling up with fluid, coughing up "black stuff," his heart
racing, and difficulties breathing.

On June 2, 2014, Harris lost consciousness and his heart stopped. Harris was transferred from the Jail to Cameron Hospital, after which he was transported to St. Luke's Hospital in Kansas City. Harris died on June 2, 2014, due to acute bronchopneumonia with abscess, diffuse alveolar damage, and empyema with resultant sepsis. Harris's spouse and three children filed this lawsuit against twenty-three defendants, asserting claims under 42 U.S.C. § 1983 (Counts I and II), negligence (Count III), negligent hiring/training/supervision (Count IV), and medical malpractice (Counts V and VI). Doc. #103.

Defendants ACH, Norman Johnson, Brenda Johnson, Sherry Miller, Karen Stogie, Deborah Ash, Dr. Greg Rakestraw, Dr. Karen Butler, Sandi Lehman, Dr. Catherine Van Voorn, Rebecca Martin, and Kyle Hadley (collectively, "Third-Party Plaintiffs") filed a Third-Party Complaint against Third-Party Defendants (Mobilex, Dr. Bernfield, and Dr. Eisenstein). Doc. #130. Third-Party Plaintiffs contracted with Mobilex to provide on-site radiology services at the Jail. *Id.*, ¶ 9. Third-Party Plaintiffs allege Dr. Bernfield and Dr. Eisenstein were employees or subcontractors of Mobilex in May 2014. *Id.*, ¶¶ 6-7. Third-Party Plaintiffs allege that if they are found at fault for the death of Harris, such fault is attributable in whole or in part to the negligence, fault, breach of contract, and/or conduct under color of law by Third-Party Defendants. *Id.*, ¶¶ 22-23.

## II. <u>STANDARD</u>

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably

2

drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the… pleadings, but… by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III. DISCUSSION

### A. Ash's Motion for Partial Summary Judgment (Doc. #377)

Plaintiffs allege claims of deliberate indifference to decedent's serious medical needs (Count I) and negligence (Count III) against Ash, who is or was employed by ACH as its Director of Medical Operations. Doc. #103. Ash seeks summary judgment on Count I only. Doc. #377. Plaintiffs did not file a response to Ash's motion. Thus, all facts set forth in Ash's motion are deemed admitted for purposes of summary judgment. *See* L.R. 56.1.

It is undisputed that Ash did not have any involvement in Harris's medical care. Doc. #378, at 1; Doc. #378-1, at 2. She never met Harris, did not know anything about his care or treatment at the Jail, and was never aware of his medical condition until after he passed away. Doc. #378, at 2; Doc. #378-1, at 2.

Deliberate indifference to an inmate's serious illness constitutes cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical 'torture or a lingering death….'" *Id.* at 103 (citation omitted). To establish a claim of deliberate indifference to an inmate's serious medical needs, a plaintiff must demonstrate (1) the inmate suffered an objectively serious medical need, and (2) the defendant actually knew of but deliberately disregarded that need. *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011); *Dulany v. Carnahan*, 132 F.3d 1235, 1239 (8th Cir. 1997) (citation omitted); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

It is undisputed that Ash did not know about Harris, much less his medical needs, until after he passed away. Because Ash did not possess the requisite knowledge to establish a deliberate indifference claim, she is entitled to summary judgment on Count I. *Schaub*, 638 F.3d at 914; *Dulany*, 132 F.3d at 1239. Accordingly, summary judgment is entered in Ash's favor with regard to Count I.

### B. Lehman's Motion for Partial Summary Judgment (Doc. #380)

Plaintiffs allege claims of deliberate indifference to decedent's serious medical needs (Count I) and negligence (Count III) against Lehman, who is or was employed by ACH as a regional nurse manager. Doc. #103. Lehman seeks summary judgment on Count I only. Doc. #380. Plaintiffs did not file a response to Lehman's motion. Thus, all facts set forth in Lehman's motion are deemed admitted for purposes of summary judgment. *See* L.R. 56.1.

It is undisputed that Lehman did not have any involvement in Harris's medical care. Doc. #381, at 1; Doc. #381-1, at 1. She never met Harris, did not know anything about his care or treatment at the Jail, and was never aware of his medical condition until after he passed away. Doc. #381, at 2; Doc. #381-1, at 1-2.

Similar to Ash, it is undisputed that Lehman did not know about Harris, much less his medical needs, until after he passed away. Because Lehman did not possess the requisite knowledge to establish a deliberate indifference claim, she is entitled to summary judgment on Count I. *Schaub*, 638 F.3d at 914; *Dulany*, 132 F.3d at 1239. Therefore, summary judgment is entered in Lehman's favor with regard to Count I.

### C. Miller's Motion for Summary Judgment (Doc. #383)

Plaintiffs allege claims of deliberate indifference to decedent's serious medical needs (Count I) and negligence (Count III) against Miller, who is or was employed by ACH as its President and Chief Operating Officer. Doc. #103. Miller seeks summary judgment on both claims. Doc. #383. Plaintiffs did not file a response to Miller's motion. Thus, all facts set forth in Miller's motion are deemed admitted for purposes of summary judgment. *See* L.R. 56.1.

4

(1) <u>Deliberate Indifference to Serious Medical Needs</u>

To demonstrate a defendant actually knew of but deliberately disregarded a serious medical need, a plaintiff must establish a "mental state akin to criminal recklessness:  disregarding a known risk to the inmate's health." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)).  A plaintiff must establish the defendant had actual, subjective knowledge of the inmate's serious medical need, but such knowledge can be established through circumstantial evidence.  *Id.* (citation omitted).

It is undisputed that Miller did not have any involvement in rendering medical care to Harris.  Doc. #384 at 2; Doc. #384-1, at 2.  Further, Miller did not supervise the ACH employees who were assigned to the Jail.  Doc. #384, at 2-3; Doc. #384-1, at 1-2.  Without involvement in Harris's medical treatment and without evidence establishing she had knowledge of Harris's serious medical need and thereafter deliberately disregarded his serious medical need, Miller cannot be liable for deliberate indifference to Harris's serious medical needs.  *Schaub*, 638 F.3d at 914; *Dulany*, 132 F.3d at 1239.  Therefore, summary judgment is entered in Miller's favor with regard to Count I.

(2) <u>Negligence</u>

Plaintiffs allege Miller was negligent by hiring and retaining employees and agents who lacked adequate qualifications, training, and experience and by failing to adequately train and/or supervise ACH employees and agents.  Doc. #103, ¶¶ 105-112.  Under Missouri law, for claims of negligent supervision or training, a plaintiff must establish (1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm, (2) a breach of that duty, (3) a proximate cause between the breach and the resulting injury, and (4) actual damages to the plaintiff.  *Garrett v. Albright*, No. 06-CV-0785, 2008 WL 795621, at * 5 (W.D. Mo. Mar. 21, 2008) (citations omitted).  For a claim of negligent hiring, a plaintiff must establish the defendant knew or should have known of the employee's dangerous proclivities, and the employer's negligence was the proximate cause of the plaintiff's injuries.  *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 87 (Mo. Ct. App. 2012) (citing *Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. banc 1997)).  Claims for negligent hiring, retention,

and supervision "require evidence that would cause the employer to foresee that the employee would create an unreasonable risk of harm outside the scope of his employment." *Id.* (quoting *Reed v. Kelly*, 37 S.W.3d 274, 278 (Mo. Ct. App. 2000)).

It is undisputed that Miller did not have any involvement in the establishment and implementation of ACH's procedures for hiring, training, and scheduling of medical personnel in Missouri. Doc. #384, at 1-2; Doc. #384-1, at 1-2. Additionally, Miller was never involved in the decisions to hire or retain ACH medical personnel assigned to the Jail. Doc. #384, at 2; Doc. #384-1, at 2. She was not involved in the assigning, training, supervision, or monitoring of medical personnel at the Jail. Doc. #384, at 2-3; Doc. #384-1, at 1-2. Without evidence that Miller was involved in the hiring, training, or supervision of ACH employees at the Jail, Plaintiff has not established that Miller could be liable for negligence. Thus, summary judgment is entered in Miller's favor with regard to Count III.

### D. Brenda Johnson's Motion for Summary Judgment (Doc. #386)

Plaintiffs allege claims of deliberate indifference to decedent's serious medical needs (Count I) and negligence (Count III) against Brenda Johnson, who is the co-founder and co-owner of ACH and serves as its Vice Chief Executive Officer. Doc. #103; Doc. #387-1, at 1; Doc. #387-2, at 13, 18-19. Brenda Johnson seeks summary judgment on both claims. Doc. #386. Plaintiffs did not file a response her motion. Thus, all facts set forth in Brenda Johnson's motion are deemed admitted for purposes of summary judgment. *See* L.R. 56.1.

### (1) Deliberate Indifference to Serious Medical Needs

As set forth above, a plaintiff must establish the defendant actually knew of but deliberately disregarded the decedent's medical need. *Vaughn*, 557 F.3d at 908 (citation omitted). Similar to Miller, it is undisputed that Brenda Johnson did not have any involvement in rendering medical care to Harris, and she was not aware of his medical condition until after this matter was filed. Doc. #387 at 2-3; Doc. #387-1, at 2; Doc. #387-2, at 43-44. She did not supervise the ACH employees who were assigned to the Jail. Doc. #387, at 2-3; Doc. #387-1, at 2. Because she had no involvement in

6

Harris's medical treatment and she had no knowledge of Harris's serious medical need, Brenda Johnson cannot be liable for deliberate indifference to Harris's serious medical needs. *Schaub*, 638 F.3d at 914; *Dulany*, 132 F.3d at 1239. Therefore, summary judgment is entered in Brenda Johnson's favor with regard to Count I.

## (2) Negligence

Plaintiffs allege Brenda Johnson was negligent by hiring and retaining employees and agents who lacked adequate qualifications, training, and experience and by failing to adequately train and/or supervise ACH employees and agents. Doc. #103, ¶¶ 105-112. To establish a claim of negligent supervision or training, Plaintiffs must establish Brenda Johnson had a legal duty to use ordinary care to protect the decedent against unreasonable risks of harm, she breached that duty, her breach was a proximate cause of decedent's death, and Plaintiffs have been injured. *Garrett*, 2008 WL 795621, at * 5 (citations omitted). To establish a negligent hiring claim, Plaintiffs must show Brenda Johnson knew or should have known of the ACH employee's dangerous proclivities, and her negligence was the proximate cause of the decedent's death. *Dibrill*, 383 S.W.3d at 87 (citation omitted).

It is undisputed that Brenda Johnson did not have any involvement in the establishment and implementation of ACH's procedures for hiring, training, and scheduling of medical personnel in Missouri. Doc. #387, at 1-2; Doc. #387-1, at 1-2; Doc. #387-2, at 32-33, 35, 37-40. Further, she was never involved in decisions to hire or retain ACH medical personnel assigned to the Jail. Doc. #387, at 2; Doc. #387-1, at 1-2; Doc. #387-2, at 32-33, 35. And she was not involved in the assigning, training, supervision, or monitoring of medical personnel at the Jail. Doc. #387, at 2-3; Doc. #387-1, at 1-2; Doc. #387-2, at 37-38. Because the undisputed evidence establishes Brenda Johnson was not involved in the hiring, training, or supervision of ACH employees at the Jail, Plaintiff has failed to set forth a *prima facie* case of negligence against Brenda Johnson. Thus, summary judgment is entered in Brenda Johnson's favor with regard to Count III.

**E. Butler's Motion for Summary Judgment (Doc. #389)**

Plaintiffs allege claims of deliberate indifference to decedent's serious medical needs (Count I) and negligence (Count III) against Dr. Butler, who is or was employed by ACH. Doc. #103. Dr. Butler seeks summary judgment on both claims. Doc. #389. Plaintiffs did not file a response to her motion. Thus, all facts set forth in Dr. Butler's motion are deemed admitted for purposes of summary judgment. *See* L.R. 56.1.

(1) Deliberate Indifference to Serious Medical Needs

As set forth above, a plaintiff must establish the defendant actually knew of but deliberately disregarded the decedent's medical need. *Vaughn*, 557 F.3d at 908 (citation omitted). Similar to Miller, it is undisputed that Dr. Butler did not have any involvement in rendering medical care to Harris. Doc. #390 at 2; Doc. #390-1, at 2. She did not supervise the ACH employees who were assigned to the Jail. Doc. #390, at 2-3; Doc. #390-1, at 2. Because she had no involvement in Harris's medical treatment and there is no evidence that she had knowledge of Harris's serious medical need, Dr. Butler cannot be liable for deliberate indifference to Harris's serious medical needs. *Schaub*, 638 F.3d at 914; *Dulany*, 132 F.3d at 1239. Therefore, summary judgment is entered in Dr. Butler's favor with regard to Count I.

(2) Negligence

Plaintiffs allege Dr. Butler was negligent by hiring and retaining employees and agents who lacked adequate qualifications, training, and experience and by failing to adequately train and/or supervise ACH employees and agents. Doc. #103, ¶¶ 105-112. To establish a claim of negligent supervision or training, Plaintiffs must establish Dr. Butler had a legal duty to use ordinary care to protect the decedent against unreasonable risks of harm, she breached that duty, her breach was a proximate cause of decedent's death, and Plaintiffs have been injured. *Garrett*, 2008 WL 795621, at * 5 (citations omitted). To establish a negligent hiring claim, Plaintiffs must show Dr. Butler knew or should have known of the ACH employee's dangerous proclivities, and her negligence was the proximate cause of the decedent's death. *Dibrill*, 383 S.W.3d at 87 (citation omitted).

8

It is undisputed that Dr. Butler did not have any involvement in the establishment and implementation of ACH's procedures for hiring, training, and scheduling of medical personnel in Missouri.  Doc. #390, at 1-2; Doc. #390-1, at 1-2.  Further, she was never involved in decisions to hire or retain ACH medical personnel assigned to the Jail.  Doc. #390, at 2; Doc. #390-1, at 1-2.  And she was not involved in the assigning, training, supervision, or monitoring of medical personnel at the Jail.  Doc. #390, at 2-3; Doc. #390-1, at 1-2.  Because the undisputed evidence establishes Dr. Butler was not involved in the hiring, training, or supervision of ACH employees at the Jail, Plaintiff has failed to set forth a *prima facie* case of negligence against Dr. Butler.  Thus, summary judgment is entered in Dr. Butler's favor with regard to Count III.

### F.  Stocke's Motion for Summary Judgment (Doc. #392)

Plaintiffs allege claims of deliberate indifference to decedent's serious medical needs (Count I) and negligence (Count III) against Stocke, who is ACH's Vice President of Contract Initiation, Quality Assurance/Risk Management.  Doc. #103; Doc. #392, at 2.  Stocke seeks summary judgment on both claims.  Doc. #392.  Plaintiffs did not file a response to her motion.  Thus, all facts set forth in Stocke's motion are deemed admitted for purposes of summary judgment.  *See* L.R. 56.1.

### (1) Deliberate Indifference to Serious Medical Needs

As set forth above, a plaintiff must establish the defendant actually knew of but deliberately disregarded the decedent's medical need.  *Vaughn*, 557 F.3d at 908 (citation omitted).  Similar to Miller, it is undisputed that Stocke did not have any involvement in rendering medical care to Harris.  Doc. #393 at 2; Doc. #393-1, at 2.  She did not supervise the ACH employees who were assigned to the Jail.  Doc. #393, at 2-3; Doc. #393-1, at 2.  Because she had no involvement in Harris's medical treatment and there is no evidence that she had knowledge of Harris's serious medical need, Stocke cannot be liable for deliberate indifference to Harris's serious medical needs.  *Schaub*, 638 F.3d at 914; *Dulany*, 132 F.3d at 1239.  Therefore, summary judgment is entered in Stocke's favor with regard to Count I.

9

(2) <u>Negligence</u>

Plaintiffs allege Stocke was negligent by hiring and retaining employees and agents who lacked adequate qualifications, training, and experience and by failing to adequately train and/or supervise ACH employees and agents.  Doc. #103, ¶¶ 105-112.  To establish a claim of negligent supervision or training, Plaintiffs must establish Stocke had a legal duty to use ordinary care to protect the decedent against unreasonable risks of harm, she breached that duty, her breach was a proximate cause of decedent's death, and Plaintiffs have been injured.  *Garrett*, 2008 WL 795621, at * 5 (citations omitted).  To establish a negligent hiring claim, Plaintiffs must show Stocke knew or should have known of the ACH employee's dangerous proclivities, and her negligence was the proximate cause of the decedent's death.  *Dibrill*, 383 S.W.3d at 87 (citation omitted).

It is undisputed that Stocke had no involvement in the establishment and implementation of ACH's procedures for hiring, training, and scheduling of medical personnel in Missouri.  Doc. #393, at 1-2; Doc. #393-1, at 1-2.  Further, she was never involved in decisions to hire or retain ACH medical personnel assigned to the Jail.  Doc. #393, at 2; Doc. #393-1, at 1-2.  And she was not involved in the assigning, training, supervision, or monitoring of medical personnel at the Jail.  Doc. #393, at 2; Doc. #393-1, at 1-2.  Because the undisputed evidence establishes Stocke was not involved in the hiring, training, or supervision of ACH employees at the Jail, Plaintiff has failed to set forth a *prima facie* case of negligence against Stocke.  The Court enters summary judgment in Stocke's favor with regard to Count III.

### G. Hadley's Motion for Partial Summary Judgment (Doc. #395)

Plaintiffs allege claims of deliberate indifference to decedent's serious medical needs (Count I) and medical malpractice (Count V) against Hadley, a nurse who is or was employed by ACH.  Doc. #103.  Hadley seeks summary judgment on Plaintiffs' claim of deliberate indifference to decedent's serious medical needs.  Doc. #395.  Plaintiffs filed no response to Hadley's motion.  Thus, all facts set forth in Hadley's motion are deemed admitted for purposes of summary judgment.  *See* L.R. 56.1.

10

It is undisputed that the only time Hadley saw or had any involvement in the care of Harris was on May 19, 2014, which was Hadley's first time visiting the Jail. Doc. #396, at 2; Doc. #396-1, at 18, 20, 22; Doc. #396-2, at 17-18, 31, 37. When Hadley interacted with Harris, he did not believe that Harris showed any obvious signs of distress or was suffering from a serious illness. Doc. #396, at 2; Doc. #396-1, at 35-36. Hadley's belief was based upon Harris's self-reported symptoms: body aches and withdrawal from methadone. Doc. #396, at 2; Doc. #396-1, at 32, 34; Doc. #396-2, at 27-28, 34. Hadley observed Harris responded appropriately; he was alert and oriented; his pupils were equal, round, and reactive to light; he did not have a fever; he had normal respirations; he did not have any tremors; and he was not sweating. Doc. #396, at 2; Doc. #396-1, at 32-34; Doc. #396-2, at 28-30. According to Hadley, Harris had no obvious signs of breathing difficulty. Doc. #396-1, at 33; Doc. #396-2, at 30, 48-49. Based upon his observations of Harris on May 19, 2014, Hadley did not believe Harris showed obvious signs of distress or was suffering from a serious illness. Doc. #396, at 3; Doc. #396-1, at 35-36; Doc. #396-2, at 30, 32.

Hadley argues Plaintiffs failed to establish that he was deliberately indifferent to the serious medical needs of Harris. As set forth above, to establish a claim of deliberate indifference to an inmate's serious medical needs, a plaintiff must demonstrate (1) the inmate suffered an objectively serious medical need, and (2) the defendant actually knew of but deliberately disregarded that need. *Schaub*, 638 F.3d at 914. To demonstrate a defendant actually knew of but deliberately disregarded a serious medical need, a plaintiff must establish a "mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Vaughn*, 557 F.3d at 908 (quoting *Gordon*, 454 F.3d at 862). A plaintiff must establish the defendant had actual, subjective knowledge of the inmate's serious medical need, but such knowledge can be established through circumstantial evidence. *Id.* (citation omitted).

Here, the evidence before the Court does not establish Hadley knew of Harris's alleged serious medical need. Without knowledge of Harris's alleged serious medical need, Hadley could not have deliberately disregarded that serious medical need. *Schaub*, 638 F.3d at 914; *Dulany*, 132 F.3d at 1239. Therefore, summary judgment is entered in Hadley's favor with regard to Count I.

11

**H. Dr. Norman Johnson's Motion for Partial Summary Judgment (Doc. #374)**

Plaintiffs allege claims of deliberate indifference to decedent's serious medical needs (Count I) and negligence (Count III) against Dr. Johnson, who is ACH's Chief Executive Officer and co-owner.  Doc. #103; Doc. #375-1, at 1.  Dr. Johnson seeks summary judgment on Plaintiffs' claim of deliberate indifference to decedent's serious medical needs only.  Plaintiffs oppose the motion.

It is undisputed that Dr. Johnson never met Harris and did not have involvement in rendering medical care to Harris.  Doc. #375, at 1-2; Doc. #375-1, at 1; Doc. #418, at 1.  Additionally, it is undisputed that Dr. Johnson was never personally aware of and did not have information about Harris's medical condition until after Harris passed away. Doc. #375, at 2; Doc. #375-1, at 1-2; Doc. #418, at 1.  Without knowledge of Harris's alleged serious medical need, Dr. Johnson could not have deliberately disregarded that serious medical need.  *Schaub*, 638 F.3d at 914; *Dulany*, 132 F.3d at 1239.

However, Plaintiffs argue Dr. Johnson's summary judgment motion should be denied because Dr. Johnson was Dr. Rakestraw's supervisor and Dr. Johnson was involved in some training that Dr. Rakestraw received.  To impose liability on a supervisor, the supervisor's misconduct must be similar to the conduct giving rise to liability.  *Saylor v. Neb.*, 812 F.3d 637, 644-45 (8th Cir. 2016) (citing *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012)).  "[T]o be liable under § 1983 the medical defendants had to personally violate [the inmate's] rights or be responsible for a systematic condition that violates the Constitution."  *Id.* at 645 (citation omitted).  A supervisor may be liable under section 1983 if he or she "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial actions; (4) proximately causing injury" to the inmate.  *Livers*, 700 F.3d at 355 (citations and internal quotations omitted). Plaintiffs failed to establish that Dr. Johnson's alleged misconduct was similar to Dr. Rakestraw's alleged misconduct, Dr. Johnson personally violated Harris's constitutional rights, or Dr. Johnson had notice of a pattern of unconstitutional acts by Dr. Rakestraw, tacitly authorized those acts, and failed to take sufficient remedial actions, which caused Harris's death.  Accordingly, Plaintiffs failed to establish Dr. Johnson, as Dr. Rakestraw's supervisor, could be liable under section 1983.

12

Plaintiffs further contend Dr. Johnson's summary judgment motion should be denied because of actions he took or failed to take after Harris's death. Doc. #418, at 1-4, 7. To support his argument, Plaintiffs cite two cases, neither of which emanates from the Eighth Circuit. Plaintiffs' reliance on *Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001) is misplaced. While the quotation plucked from *Gomez* is accurate, the decision is inapposite here. *Gomez* did not pertain to section 1983; rather, inmates brought a lawsuit against prison officials alleging retaliation for exercise of their rights of access to courts. *Id.* at 1122-28.

Plaintiffs' reliance on *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), is similarly flawed. In *Grandstaff*, claims were brought against the City of Borger ("the City") and its police officers under section 1983 and Texas law after officers mistook an innocent person for a fugitive and killed him. *Id.* at 165. The Fifth Circuit considered whether the City could be liable; it did not analyze whether an individual supervisor could be liable. *Id.* at 168-71. Moreover, the Court examined the City's failure to reprimand or discharge police officers "[f]ollowing this incompetent and catastrophic performance," "use of deadly force," and "dangerous recklessness of that police force." *Id.* at 171-72 (finding the jury was entitled to infer that the killing of an innocent person by use of deadly force demonstrated the City's policy, as approved by its policymaker). The Eighth Circuit has never examined the holding in *Grandstaff*.

The United States District Court for the Eastern District of Missouri, in *Jenkins v. St. Louis County*, discussed the limitations of the *Grandstaff* decision. Case No. 4:10CV827SNLJ, 2011 WL 5868310 (E.D. Mo. Nov. 22, 2011).[1] Therein, the Honorable Stephen N. Limbaugh, Jr., found the plaintiffs, who claimed unlawful detention and arrest, failed to offer any legal authority within the Eighth Circuit establishing St. Louis County's alleged inaction following an event "demonstrates prior notice by the County that its training program was constitutionally deficient." *Id.* at *12. He also concluded that the plaintiffs' speculation that the County's failure to discipline was "tacit approval" of alleged unconstitutional actions did not meet the required "stringent standard of fault"

---

[1] In his reply brief, Dr. Johnson references an Eastern District of Missouri case that discussed the limited holding in *Grandstaff*, but failed to provide a citation or case name for that case. As best the Court can tell, Dr. Johnson is referring to *Jenkins*.

for imposing liability under section 1983. *Id.* (stating *Grandstaff* is "extremely limited in scope to its facts, and its legal conclusions inapplicable to the current situation.").

There is no authority in the Eighth Circuit that would permit Plaintiffs to proceed with their theory of deliberate indifference to decedent's serious medical needs against Dr. Johnson based upon Dr. Johnson's actions or failure to act after Harris's death, particularly when Plaintiffs have not established Dr. Johnson's involvement in the policies that were allegedly violated and/or are allegedly unconstitutional. And this Court is not inclined to follow the Fifth Circuit's limited and fact-specific ruling in *Grandstaff*. Furthermore, Plaintiffs failed to set forth admissible evidence substantiating their allegations and speculation about Dr. Johnson's actions or inactions to withstand Dr. Johnson's summary judgment motion. *See Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (finding a party "must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.") (citation and internal quotations omitted). For these reasons, summary judgment is entered in Dr. Johnson's favor with regard to Count I.

## I.  Third-Party Defendants' Motion for Summary Judgment (Doc. #368)

Third-Party Defendants (Symphony Diagnostic Services No. 1, LLC d/b/a Mobilex USA, Dr. Matthew Eisenstein, and Jeffrey Bernfield) request entry of summary judgment in their favor on Third-Party Plaintiffs' claims against them.[2]

In January 2013, Daviess and DeKalb Counties, acting through their respective county commissioners and sheriffs, entered into a contract with ACH for the provision of inmate health services at the Jail. Doc. #370, at 7; Doc. #416, at 10. Prior to that, ACH had entered into a contract with Mobilex for Mobilex to provide onsite radiology services at correctional facilities serviced by ACH. Doc. #370, at 7; Doc. #416, at 10. Mobilex agreed to provide these services at the order of a licensed and authorized physician,

---

[2] Third-Party Plaintiffs allege if they are found at fault for Harris's death, such fault is attributable, in whole or in part, to the negligence, fault, breach of contract, and/or conduct under color of law by Third-Party Defendants. Doc. #130, ¶¶ 22-23. Third-Party Plaintiffs' Complaint also incorporated by reference Plaintiffs' Third Amended Complaint. *Id.*, ¶ 1.

and the x-rays were to be interpreted by a licensed and qualified radiologist. Doc. #370, at 8; Doc. #316, at 10; Doc. #416, at 18; Doc. #424, at 1-2. Mobilex agreed to provide a verbal report to the correctional facility at which the patient-inmate was located, and once a written report was completed, provide the written report to the correctional facility. Doc. #416, at 18; Doc. #424 at 1.

Mobilex, through its technicians, took requested images of decedent at the Jail on May 15, 2014, and May 28, 2014. Doc. #370, at 8; Doc. #416, at 11. The images were electronically transmitted from Mobilex to Rely Radiology for interpretation. Doc. #370, at 8; Doc. #416, at 11. Rely Radiology, which is not a party to this suit, had previously contracted with Mobilex to provide radiological interpretation services for Mobilex. Doc. #370, at 8; Doc. #416, at 11. Rely Radiology contracted with Dr. Eisenstein and Dr. Bernfield to provide radiological interpretation services. Doc. #370, at 8-9; Doc. #370-15, at 2-3; Doc. #416, at 12-13. On May 15, 2014, and May 28, 2014, Dr. Eisenstein and Dr. Bernfield, respectively, interpreted the images taken those same days. Doc. #370, at 9-10; Doc. #416, at 14. The doctors also prepared radiology reports for the images, which were sent to Third-Party Plaintiffs. Doc. #370-16; Doc. #370-20; Doc. #416, at 20, Doc. #424, at 9-12.


### (1) Section 1983 Claims Against Third-Party Defendants

In response to Third-Party Defendants' motion for summary judgment, Third-Party Plaintiffs withdrew all claims under section 1983 against Third-Party Defendants. Doc. #416, at 25. Those claims are hereby dismissed.


### (2) Breach of Contract Claims Against Third-Party Defendants

Third-Party Plaintiffs alleged that Third-Party Defendants breached a contract. To establish a claim for breach of contract, a plaintiff must show: (1) a contract between the parties; (2) the plaintiff had rights and the defendant had obligations under the contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages. *Guidry v. Charter Commc'ns, Inc.*, 269 S.W.3d 520, 527 (Mo. Ct. App. 2008) (citation omitted).

15

*(a) Drs. Eisenstein and Bernfield*

There is no evidence of a contract between Third-Party Plaintiffs and Dr. Eisenstein and/or Bernfield. It is undisputed that these doctors contracted with Rely Radiology. Doc. #370, at 8-9; Doc. #370-15, at 2-3; Doc. #416, at 12-13. Because there was no contract between Third-Party Plaintiffs and Drs. Eisenstein and Bernfield, the doctors are entitled to summary judgment on Third-Party Plaintiffs' breach of contract claim against them.

*(b) Mobilex*

It is undisputed there was a contract between Mobilex and Third-Party Plaintiffs. Doc. #370, at 7; Doc. #416, at 10. Mobilex argues Third-Party Plaintiffs' breach of contract claim is precluded because section 1983 does not permit indemnification or contribution. Doc. #369, at 28. Third-Party Plaintiffs contend their breach of contract claim is not precluded because they seek contribution and indemnification under theories of breach of contract and negligence, not pursuant to section 1983. Doc. #416, at 25-27. Further, as set forth above, all section 1983 claims purportedly brought by Third-Party Plaintiffs against Third-Party Defendants were withdrawn.

In their reply brief, Mobilex asserted a new theory for granting summary judgment on Third-Party Plaintiffs' breach of contract claim – to wit, Third-Party Plaintiffs improperly couched their negligence claim as a breach of contract claim. Doc. #425, at 5-8. Mobilex, however, did not raise this argument until its reply brief, and it should have been raised earlier. *Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 609 n.4 (8th Cir. 2004) (refusing to consider argument raised for the first time in a reply brief). This Court will not entertain a new theory for entry of summary judgment asserted in a reply brief, when the theory could have been brought in the motion. Thus, summary judgment is denied with regard to Mobilex's motion for summary judgment on Third-Party Plaintiffs' breach of contract claim.

(3) <u>Claims Against Mobilex Based Upon Vicarious Liability</u>

Mobilex argues it is entitled to judgment as a matter of law because it did not employ, contract with, or maintain control over Drs. Eisenstein and Bernfield, and

therefore, it could not be responsible for Dr. Eisenstein's or Dr. Bernfield's actions. Doc. #369, at 5. Third-Party Plaintiffs admit they are not seeking to establish vicarious liability of Mobilex based upon section 1983. Doc. #416, at 25. However, Third-Party Plaintiffs argues Mobilex is responsible for Drs. Eisenstein and Bernfield on the basis of ostensible agency. Doc. #416, at 23.

Whether an agency relationship exists is ordinarily a question of fact. *Tom Lange Co. v. Cleaning by House Beautiful*, 793 S.W.2d 869, 871 (Mo. Ct. App. 1990) (citation omitted). Summary judgment may be appropriate if the evidence is conclusive. *Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1009, 1022 (8th Cir. 2001). Here, genuine issues of material fact exist with regard to whether an agency relationship existed between Mobilex and Drs. Eisenstein and/or Bernfield. Accordingly, Mobilex's motion for summary judgment on Third-Party Plaintiffs' theory of vicarious liability is denied.

(4) <u>Negligence and Medical Malpractice Claims Against Third-Party Defendants</u>

Third-Party Plaintiffs and Third-Party Defendants agree the jury should be permitted to apportion fault among all parties for the medical malpractice and negligence claims raised in Plaintiffs' Third Amended Complaint and incorporated in the Third-Party Complaint. Doc. #416, at 28; Doc. #425, at 5. Accordingly, summary judgment is granted in Third-Party Defendants' favor with regard to Third-Party Plaintiffs' claims of negligence and medical malpractice. With regard to the negligence and medical malpractice claims asserted by Plaintiffs, Third-Party Defendants, if found liable, are responsible solely to Plaintiffs for their individual proportion of fault allocation.

**J. Jail Defendants' Motion for Summary Judgment (Doc. #398)**

Daviess-DeKalb County Regional Jail, DeKalb County Commission, Daviess County Commission, DeKalb County, Daviess County, Daviess-DeKalb Regional Jail District, Ben Becerra, Robert Gray, Wes Raines, and Randy Sims ("Jail Defendants") also seek summary judgment. The Court will address these Defendants' arguments in the order in which they were presented.

(1) <u>Daviess-DeKalb County Regional Jail and County Commissions</u>

Plaintiffs allege claims of deliberate indifference to serious medical needs (Count I) and negligent hiring, training, and supervision (Count IV) against several defendants, including Daviess-DeKalb County Regional Jail, Daviess County Commission, and DeKalb County Commission. These three Defendants move for summary judgment because they are not proper legal entities. Plaintiffs do not dispute that "Daviess-DeKalb County Regional Jail" is a building, not a "person" within the meaning of 42 U.S.C. § 1983.[3] Additionally, Plaintiffs do not dispute that Daviess County Commission and DeKalb County Commission are not proper parties. Therefore, summary judgment is entered in favor of Daviess-DeKalb County Regional Jail, Daviess County Commission, and DeKalb County Commission on all of Plaintiffs' claims against them.

(2) <u>Daviess County and DeKalb County</u>

In Count II, Plaintiffs allege Daviess and DeKalb Counties violated section 1983 by implementing, adopting, ratifying, condoning, or acquiescing in the policies, customs, and/or practices that exhibited deliberate indifference to the serious health issues suffered by Harris. Doc. #103, ¶¶ 92-104. In Count IV, Plaintiffs contend Daviess and DeKalb Counties were negligent in hiring, training, and supervising. *Id.*, ¶¶ 113-121. Daviess and DeKalb Counties seek summary judgment on both claims.

"Local governing bodies…can be sued directly under § 1983…where…the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Here, it is undisputed that Daviess and DeKalb Counties were not responsible for the operation or governance of the Jail. Doc. #401, at 6, 18; Doc. #417, at 1. Instead, the Jail was governed by a commission composed of the sheriff and presiding commissioner from each county within the Jail's district. Doc. #401, at 6, 18; Doc. #417, at 1[4]; *see also* Mo.

---

[3] The proper legal entity is Daviess-DeKalb Regional Jail District (referred throughout this Order as "the Jail"), which is a defendant in this matter.

[4] Plaintiffs failed to respond to the Jail Defendants' purported fact #71. *See* Doc. #417, at 9. Pursuant to Local Rule 56.1, that fact is deemed uncontroverted for purposes of summary judgment.

18

Rev. Stat. § 221.045.1.  Further, Plaintiffs present no alternate argument for Daviess and DeKalb Counties to somehow be liable under section 1983.  Because it is undisputed that Daviess and DeKalb Counties are not responsible for the operation or governance of the Jail, they cannot be held liable under section 1983.  Therefore, summary judgment is entered in favor of Daviess and DeKalb Counties on all of Plaintiffs' claims against them.

(3) <u>Civil Rights Claims Against Gray, Becerra, Raines, Sims, and Allison</u>

Plaintiffs allege Gray, Becerra, Raines, Sims, and Allison were deliberately indifferent to decedent's serious medical needs (Count I).[5]  Doc. #103, ¶¶ 74-91.  These individuals seek summary judgment on Count I with regard to those claims brought against them in their individual capacities.[6]

Public servants may be sued under section 1983 in their official capacity, individual capacity, or both.  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citation omitted).  Plaintiffs sued these individuals in both their individual and official capacities.  Doc. #103, ¶¶ 9-13.  The Court will first address the claims against these individuals in their individual capacities.

Plaintiffs failed to respond to the Jail Defendants' argument that Gray, Becerra, Raines, Sims, and Allison are entitled to summary judgment on Plaintiffs' claims against them in their individual capacities.  By failing to oppose a basis for summary judgment, Plaintiffs effectively waived those claims.  *Robinson v. Am. Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014) (finding the plaintiff waived those claims to which she did not oppose in response to a summary judgment motion); *Satcher v. Univ. of Ark. at Pine Bluff Board of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) (stating the "failure to oppose a basis for summary judgment constitutes waiver of that argument.").  Therefore, these claims are dismissed.

---

[5] Plaintiffs also allege claims of negligent hiring, training, and supervision against these individuals, which will be discussed *infra.*

[6] These Defendants did not seek summary judgment on Count I with regard to the claims brought against them in their official capacities.  Doc. #398; Doc. #401.

(4) <u>State Tort Claims Against Gray, Becerra, Raines, Sims, and Allison</u>

Plaintiffs also allege Gray, Becerra, Raines, Sims, and Allison were negligent with regard to hiring, training, and supervision (Count IV). These Defendants contend that Plaintiffs' state tort claims are barred by Missouri's official immunity and public duty doctrines. Doc. #401, at 34-36. Similar to Plaintiffs' claims against these individuals in their individual capacities, Plaintiffs failed to respond to Defendants' argument that they are entitled to summary judgment on the stat have effectively waived those claims. *Robinson*, 753 F.3d at 754; *Satcher*, 558 F.3d at 735. Therefore, Plaintiffs' state tort claims against Gray, Becerra, Raines, Sims, and Allison are dismissed.

(5) <u>State Tort Claims Against the Jail</u>

Plaintiffs also allege the Jail was negligent with regard to hiring, training, and supervision (Count IV). The Jail argues that it is entitled to summary judgment on these claims because the claims are barred by sovereign immunity. Similar to the claims discussed above, Plaintiffs failed to respond to the Jail's argument that they are entitled to summary judgment on the state tort claims. Again, by failing to oppose a basis for summary judgment, Plaintiffs effectively waived those claims. *Robinson*, 753 F.3d at 754; *Satcher*, 558 F.3d at 735. Therefore, Plaintiffs' state tort claims against the Jail are dismissed.

(6) <u>Civil Rights Claims Against the Jail</u>

Plaintiffs allege the Jail was deliberately indifferent to Harris's serious medical needs (Count I) and the Jail implemented, adopted, ratified, condoned, or acquiesced with regard to policies, practices, and/or customs that violated section 1983 (Count II). Genuine issues of material fact exist with regard to these claims against the Jail. Accordingly, the Jail's motion for summary judgment on Counts I and II is denied.

(7) <u>Remaining Claim against Gray</u>

In the Court's view, the only remaining claim against Gray is Plaintiffs' claim of deliberate indifference to decedent's serious medical needs in Gray's official capacity. Gray was the administrator of the Jail from January 3, 2011, until his death on February

8, 2016. Doc. #401, at 6; Doc. #417, at 1, 10. On February 10, 2016, the Jail Defendants filed a "Suggestion of Death." Doc. #312. Rule 25(a)(1) of the Federal Rules of Civil Procedure addresses the death of a party. If a party dies, any party to the lawsuit may file a motion for substitution of party; however, the motion must be made "within 90 days after service of a statement noting the death," or the action against the deceased party must be dismissed. Fed. R. Civ. P. 25(a)(1). More than 90 days have passed since the Suggestion of Death was filed, and no party has filed a motion to substitute. Accordingly, Plaintiffs' remaining claim against Gray is dismissed.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the pending motions for summary judgment are granted in part and denied in part. Specifically:

- Third-Party Defendants' Motion for Summary Judgment (Doc. #368) is granted in part and denied in part.
  - Third-Party Plaintiffs' claims under section 1983 against Third-Party Defendants are dismissed.
  - Summary judgment is entered in Dr. Eisenstein's and Dr. Bernfield's favor with regard to Third-Party Plaintiffs' breach of contract claims.
  - Summary judgment is denied with regard to Third-Party Plaintiffs' breach of contract against Mobilex.
  - Mobilex's motion for summary judgment is denied with regard to Third-Party Plaintiffs' theory of vicarious liability.
  - Summary judgment is granted in Third-Party Defendants' favor with regard to Third-Party Plaintiffs' claims of negligence and medical malpractice.
  - Third-Party Defendants, if found liable for negligence and/or medical malpractice, are responsible solely to Plaintiffs for their individual proportion of fault allocation.

- Dr. Johnson's Motion for Partial Summary Judgment (Doc. #374) is granted. Summary judgment is entered in Dr. Johnson's favor with regard to Count I.

- Ash's Motion for Partial Summary Judgment (Doc. #377) is granted. Summary judgment is entered in Ash's favor with regard to Count I.

- Lehman's Motion for Partial Summary Judgment (Doc. #380) is granted. Summary judgment is entered in Lehman's favor with regard to Count I.

- Miller's Motion for Summary Judgment (Doc. #383) is granted. Summary judgment is entered in Miller's favor with regard to all of Plaintiffs' claims (Counts I and III) against her.

- Brenda Johnson's Motion for Summary Judgment (Doc. #386) is granted. Summary judgment is entered in Brenda Johnson's favor with regard to all of Plaintiffs' claims (Counts I and III) against her.

- Dr. Butler's Motion for Summary Judgment (Doc. #389) is granted. Summary judgment is entered in Dr. Butler's favor with regard to all of Plaintiffs' claims (Counts I and III) against her.

- Stocke's Motion for Summary Judgment (Doc. #392) is granted. Summary judgment is entered in Stocke's favor with regard to all of Plaintiffs' claims (Counts I and III) against her.

- Hadley's Motion for Partial Summary Judgment (Doc. #395) is granted. Summary judgment is entered in Hadley's favor with regard to Count I.

- Jail Defendants' Motion for Partial Summary Judgment (Doc. #398) is granted in part and denied in part.
    - Summary judgment is entered in favor of Daviess-DeKalb County Regional Jail, Daviess County Commission, and DeKalb County Commission on all of Plaintiffs' claims against them.
    - Summary judgment is entered in favor of Daviess and DeKalb Counties on all of Plaintiffs' claims against them.
    - Plaintiffs' claims against Gray, Becerra, Raines, Sims, and Allison in their individual capacities under Count I are dismissed.
    - Plaintiffs' state tort law claims against Gray, Becerra, Raines, Sims, and Allison under Count IV are dismissed.
    - Plaintiffs' state tort law claims against the Jail under Count IV are dismissed.
    - The Jail's motion for summary judgment on Plaintiffs' claims under Counts I and II is denied.
    - Plaintiffs' remaining claim against Gray is dismissed.


IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: June 30, 2016        UNITED STATES DISTRICT COURT